ORIGINAL

**IN THE UNITED STATES COURT**
**OF FEDERAL CLAIMS**

FILED
NOV 1 3 2006
U.S. COURT OF FEDERAL CLAIMS

THE ONYX GROUP,
1199 N. Fairfax Street, Suite 600
Alexandria, VA 22314

Plaintiff,

- v -

UNITED STATES OF AMERICA

Defendant

No.: 06-763 C

## VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

## NATURE OF THE ACTION

1. This is an action for declaratory and injunctive relief against the defendant to enjoin it from performance or administration of a contract arising from Solicitation No. FA9401-06-T-0028, ("the Solicitation" or "the RFQ"), issued by the defendant United States of America, acting by and through the United States Department of the Air Force, Air Force Safety Center ("the Air Force", "the Agency", or "Government") for hazard deficiency software (CLIN 0001), installation and configuration of the software (CLIN 0002), and training (CLIN 0003).

2. The plaintiff, The Onyx Group, Inc. ("Onyx"), provides information technology services and commercial products, among other service and products, to the federal government.

3. The defendant United States of America acting by and through the Air Force is a military department within the executive branch of the United States Government. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1491(b) (2006).

4. Venue is proper pursuant to 28 U.S.C. § 1391(e) (2006).

5. Onyx submitted a timely proposal in response to the Solicitation and is otherwise eligible for award.

6. By letter dated September 29, 2006, the Air Force informed Onyx that it was not the successful offeror under the RFQ and announced that it awarded a contract, allegedly in accordance with the terms of the RFQ, to Logistics Management Institute ("LMI") of Arlington, Virginia for an total cost of $453,338.00

***THE PROCUREMENT***

7. In order to provide a safe and healthful environment for its employees, the Air Force operates Air Force Safety Offices around the world through its Air Force Safety Center ("AFSC").

8. The AFSC does not have automated capability to track identified hazards in a single common database that could assist it in providing oversight in

hazard management and eventually in abating all identified hazardous conditions.

9. In the RFQ, the Air Force sought a commercial software program that would provide its safety offices the capability to enter and track any and all hazardous conditions.

10. In particular, the RFQ required the offeror to provide a comprehensive software product that could track safety, fire, and health hazards and safety deficiencies identified during inspections, mishap investigations, hazard reporting, and other means from beginning (the point of identification) to end (the point of abatement).

11. The RFQ required that the software be capable of entering, managing, and tracking identified hazards for 250 concurrent users.

12. The RFQ required that the product acquired be "commercial software" and frequently refers to the software as "COTS," which means "commercial, off-the-shelf software."

13. The RFQ required that the successful offeror would provide the commercial hazard tracking software under a current GSA Federal Supply Schedule contract.

14. The procurement was conducted through limited competition of two or three vendors in accordance with FAR Part 8.4 under the GSA Federal Supply Schedule contract program (2006).

***The Offerors***

15. Onyx is a small business supporting information technology products and services, risk analysis projects, integrating environmental safety and health systems with other IT systems, and hosting IT systems in its secure, certified hosting center for DoD and other federal clients.

16. Onyx regularly teams with The Zoldak Group, Inc., the developer of the Facility Management Assistant ("the FMA product"), an integrated risk management commerical software suite consisting of (1) the FMA inspection module, (2) the incident analysis module, (3) the process risk assessment module, and (4) the pocket inspector, a personal data assistant field data collection module.

17. The FMA product provides an easy-to-use, efficient, commercially proven approach for risk and hazard management that can be used as a single stand-alone desktop system or an enterprise-wide, internet based system.

18. The FMA product has been effectively used by many federal customers, including the Department of Defense and the National Security Agency since 1993.

19. The FMA product has also been tested and proven effective in the commercial marketplace by commercial users who regularly perform risk assessments and hazard management.

20. At the time of proposal submission (and currently), Onyx held a GSA Federal Supply Schedule contract (GSA IT Schedule GS-36F-5185H), which included in its scope of work and its price list all the relevant modules of the FMA software.

21. Under the GSA Federal Supply Schedule system, the FMA software suite qualified as a commercial, off-the-shelf product (COTS).

22. The awardee, Logistics Management Institute ("LMI"), is a large business, initially created and owned by the United States government and previously maintained as a federally funded research and development organization.

23. LMI is currently operated as a Delaware not-for-profit corporation.

24. Upon information and belief, LMI has developed a hazard management software system under contract to the United States Postal Service.

25. Upon information and belief, the LMI hazard management software system is not a commercial, off-the shelf software product.

26. LMI currently holds a GSA Federal Supply Schedule contract, GS-00F-0026M. The LMI GSA Federal Supply Schedule contract provides for services to develop software products, including hazard reporting, tracking, and management software.

27. The LMI GSA Federal Supply Schedule contract does not contain, within its scope of work or on its price list, any commercial, off-the-shelf software.

***The Evaluation and Award***

28. The RFQ listed three evaluation criteria for award: Past performance, technical approach, and price.

29. Technical performance required offerors to "demonstrate their ability to provide a product and service to meet the Government's need as required by this Solicitation."

30. Past performance was to be rated as follows in descending order of value: High confidence, Significant Confidence, Satisfactory Confidence, Unknown Confidence, Little Confidence, No Confidence.

31. Technical approach was to be rated as follows in descending order of value: Exceptional (Blue), Acceptable (Green), Marginal (Yellow), and Unacceptable (Red).

32. Past performance and technical merit were considered equal in importance and both factors combined were significantly more important than price.

33. The RFQ stated that the Government intended to award a contract "to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered."

34. By letter dated September 29, 2006, the Air Force announced that it awarded a contract, allegedly in accordance with the terms of the RFQ, to LMI for a total cost of $453,338.00.

35. On October 9, 2006, Onyx requested a debriefing to determine why it was not successful in this procurement. The Air Force granted the debriefing on October 16, 2006.

36. In the debriefing, the Air Force informed Onyx that it and LMI each had the same Past Performance rating at "High Confidence."

37. In the debriefing, the Air Force informed Onyx that it and LMI each had the same technical evaluation rating at Acceptable (Green).

38. The Air Force reported that LMI proposed "the technically sufficient proposal, has the highest past performance rating, and the lower price."

***BASIS FOR DECLARATORY AND INJUNCTIVE RELIEF***

39. The Government has an obligation under federal procurement statues and regulations to evaluate proposals fairly and accurately and in accordance with the terms of the solicitation.

40. The Government violated the procurement statutes and regulations and acted in an arbitrary and capricious manner when it failed to meet its obligation to evaluate proposals fairly and accurately and in accordance with the stated evaluation criteria by (1) making award to an offeror who did not offer a commercial, off-the-shelf (COTS) product; (2) making award to LMI for a product not listed on the LMI GSA Schedule contract, thus outside the scope of LMI's GSA Schedule contract; (3) failing to follow the evaluation criteria by assessing the technical merits

of the Onyx proposal as merely Acceptable (Green) and not Exceptional (Blue); and (4) failing to follow the evaluation criteria by converting the procurement from a Best Value award to an award to the lowest cost, highest past performance and technically acceptable offeror.

**Count I**
**(LMI Did Not Offer a Compliant Product)**

41. The RFQ clearly required offerors to provide a commercial, off-the-shelf software product.

42. The RFQ clearly required offerors to utilize their existing GSA Federal Supply Schedule contract for award, which requires that all items purchased be commercial, off-the-shelf products that are listed on their GSA contract price list.

43. The LMI GSA Federal Supply Schedule contract does not contain any identifiable commercial software product either in its description or its price list.

44. Therefore any product that LMI offered in its proposal and that the Air Force accepted for award did not meet the clear requirement to be a commercial product.

**Count II**
**(The Air Force Award Is Outside the Scope of the LMI Schedule Contract)**

45. The GSA Federal Supply Schedule contracts provide a simplified process for obtaining commonly used commercial supplies and services. These contracts allow for use of limited and streamlined competition, which still meets the

FAR requirement for full and open competition. 41 U.S.C. § 259(b)(3) (2006), FAR Part 8.4 (2006).

46. Federal procurement awards made pursuant to FAR Part 8.4 under a Federal Supply Schedule contract using only limited competition must be made within the scope of the applicable Federal Supply Schedule contract.

47. Every product and/or service that the procuring agency obtains under a Federal Supply Service contract must be within the scope of an existing, applicable Federal Supply Schedule contract and must be listed on the contract's price list.

48. The LMI GSA Federal Supply Schedule contract does not contain any identifiable commercial software product in its scope of work and its price list.

49. Therefore, the hazard deficiency software the Air Force is attempting to procure under the RFQ is outside the scope of the LMI GSA Federal Supply Schedule contract.

50. Therefore, the Air Force's attempt to acquire a hazard deficiency COTS software product under the RFQ violates the U.S. Code requirement for full and open competition and violates the requirements for purchases under the GSA Federal Supply Schedule contract program.

**Count III**
**(Failed to Perform a Proper Technical Evaluation)**

51. The technical approach evaluation factor was to be rated as follows in descending order of value: Exceptional (Blue), Acceptable (Green), Marginal

(Yellow), and Unacceptable (Red).

52. The RFQ identified the "Exceptional" rating as appropriate for a proposal that "exceeds specific minimum performance or capability requirements in a way beneficial to the Government. . . ."

53. The RFQ identified the "Acceptable" rating as appropriate for a proposal that "meets specified minimum performance or capability requirements delineated in the Request for Proposal. . . ."

54. The Onyx proposal demonstrated how the commercially tested FMA software suite both met and significantly exceeded the Government's minimum performance and capability requirements and provided unique benefits to the Government.

55. Had the Government properly evaluated the Onyx proposal under technical approach, it would not have scored Onyx as merely Acceptable (Green) but instead would have scored it Exceptional (Blue).

56. The Government scored the Onyx proposal merely as Acceptable (Green) and not as Exceptional (Blue), therefore the Air Force did not follow the stated evaluation criteria.

57. Therefore, the Air Force violated procurement statutes and regulations because it failed follow the stated evaluation criteria for evaluating technical approach.

## Count IV
## (Failure to Follow Stated Evaluation Criteria)

58. The FAR allows for several negotiated procurement methods, including the tradeoff method (FAR § 15.101-1) and the lowest price, technically acceptable method (FAR § 15.101-2).

59. Under the trade off method, the solicitation identifies all the evaluation criteria and their relative importance in consideration of award. The solicitation further states that these evaluation criteria, "when combined, are significantly more important than, approximately equal to, or significantly less important than cost or price." FAR 15.101-1(b)(2) (2006).

60. This method allows the Agency to make trade offs "among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal. The perceived benefits of the higher priced proposal shall merit the additional cost, and the rationale for tradeoffs must be documented in the file in accordance with 15.406." FAR 15.101-1(c) (2006).

61. Under the low cost, technically acceptable method, the Government will make award based on the lowest evaluated price of a proposal that meets or exceeds the acceptability standards for non-cost factors.

62. Under the low cost, technically acceptable method, the evaluators do not rank proposals as excellent, good, deficient or unacceptable, but merely determine if the proposal meets or exceeds the non-cost requirements.

63. The Air Force's RFQ in this case was clearly a "tradeoff" evaluation scheme, because it considered past performance and technical approach to be equal in importance and both combined to be more important than price.

64. In its debriefing, the Air Force reported that LMI proposed "the technically sufficient proposal, has the highest past performance rating, and the lower price."

65. Based on statements made in the Air Force debriefing to Onyx, the Air Force converted the trade off evaluation scheme identified in the RFQ to a low cost, technically acceptable method that identified proposals as acceptable or not acceptable.

66. Based on the Air Force's statement, the Air Force failed to rank the two offeror's proposals under technical approach and instead only determined them to be sufficient or insufficient.

67. The Air Force's award to LMI further violates procurement statutes and regulations because it failed to follow the stated evaluation criteria.

***Conclusion***

68. Because its decision was not grounded in a fair, adequate, and reasonable evaluation of Onyx's proposal and LMI's proposal, the Government's decision to award a contract to LMI was in violation of procurement statutes and regulations and was arbitrary and capricious.

69. As a result of the Air Force's unlawful actions, Onyx will suffer irreparable injury for which it has no adequate legal remedy. This injury will include loss of the opportunity to compete for and perform work required under the solicitation as well as the loss of the good will, past performance record, and other opportunities to compete for and perform work under similar solicitations in the future for the Air Force and other relevant executive branch agencies. Ultimately, Onyx will suffer the loss of significant revenues and profits.

70. Onyx specifically requests that this Court order that the Air Force reevaluate the proposals received under the Solicitation and make award to Onyx as the next in line for award and the best value to the Government under the stated terms of the Solicitation.

71. Onyx's requested relief will not injure the Air Force since there is no immediate or imminent need for this product and the reevaluation and proper award to Onyx can be accomplished in a matter of days.

72. The relief that Onyx requests below will ensure that the Air Force protects the public interest by preserving the integrity of and the public confidence in the federal acquisition process, thereby preserving and promoting competition for federal government contracts.

73. This Court may provide Onyx with effective relief by declaring that the Air Force unlawfully awarded the contract LMI and by requiring reevaluation of the proposals in accordance with the stated award criteria.

**REQUEST FOR RELIEF**

WHEREFORE, Onyx respectfully requests the Court to grant the following relief:

(1) Permanently enjoin defendants and all agents and representatives of the Air Force from continuing the performance of the contract awarded under the Solicitation;

(2) Declare that the Air Force unlawfully made award to LMI;

(3) Order that the Air Force reevaluate the proposals received under the Solicitation and make award to Onyx as the next in line for award and the best value to the Government under the stated terms of the Solicitation;

(4) Grant such other relief as the Court deems appropriate, including but not limited to bid and proposal costs as well as or in addition to attorneys fees and costs for maintaining this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (2006).

Respectfully submitted,

William T. Welch
BARTON, BAKER, McMAHON & TOLLE, LLP
1320 Old Chain Bridge Road, Suite 440
McLean, Virginia 22101
(703) 448-1810 - Telephone
(703) 448-3336 – Facsimile
Attorney of Record

Date: November 13, 2006

Of Counsel:

J. Patrick McMahon
BARTON, McMAHON & TOLLE, LLP
1320 Old Chain Bridge Road, Suite 440
McLean, Virginia 22101
(703) 448-1810 - Telephone
(703) 448-3336 - Facsimile

Dated: November 13, 2006

# VERIFICATION

THE UNITED STATES COURT OF FEDERAL CLAIMS )
) ss:
THE DISTRICT OF COLUMBIA )

I, Gordon J. Sliwinski, Director for IT Services, The Onyx Group, depose and say:

I am familiar with the facts relating to the foregoing Verified Complaint for Injunctive and Declaratory Relief. I have read the foregoing Verified Complaint for Injunctive and Declaratory Relief and know the contents thereof. I have either first hand knowledge or a reasonable basis for information and belief for each of the facts stated herein. Of the facts stated for which I have first hand knowledge, I believe them to be true, and of the facts stated on information and belief, I have a reasonable basis to believe them to be true.

In accordance with 28 U.S.C. § 1746, I certify under penalty of perjury that the above statements are true and correct.

SIGNED this 9th day of November, 2006

By: ______________________

Gordon J. Sliwinski
Director, IT Services
The Onyx Group
1199 N. Fairfax Street, Suite 600
Alexandria, VA 22314