ORIGINAL

IN THE UNITED STATES COURT
OF FEDERAL CLAIMS

| | |
|---|---|
| THE ONYX GROUP, INC.<br>1199 N. Fairfax Street, Suite 600<br>Alexandria, VA 22314 | ) |
| Plaintiff, | ) |
| - v - | ) No. 06-763 C |
| UNITED STATES OF AMERICA | ) |
| Defendant | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to the U.S. Court of Federal Claims Rules of Procedure, The Onyx Group, Inc. ("Onyx"), by counsel, respectfully applies to this Court for entry of a preliminary injunction to enjoin the Defendant, its officers, agents and employees, and all other persons in active concert or participation with them, from proceeding with any activities relating to the performance or administration of a contract arising from Solicitation No. FA9401-06-T-0028, ("the Solicitation" or "the RFQ"), issued by the defendant United States of America, acting by and through the United States Department of the Air Force, Air Force Safety Center ("the Air Force", "the Agency", or "Government") for hazard deficiency software (CLIN 0001), installation and configuration of the software (CLIN 0002), and training (CLIN 0003), until a hearing may be had on the merits of issuing a preliminary and/or permanent injunction.

Unless enjoined by the Court, the Defendant will proceed with performance on a contract improperly and illegally awarded to and accepted by Logistics Management Institute ("LMI") of Arlington, Virginia for an total cost of $453,338.00. This contract should have been awarded to the Plaintiff, Onyx, and the Government's failure to do so has caused Plaintiff irreparable injury and has left Plaintiff without an adequate remedy at law.

Counsel for Plaintiff further advises this Court, the Department of Justice, and The Air Force counsel that Plaintiff will withdraw its Motion for Preliminary Injunction and agree to consolidate it with its Complaint for a Permanent Injunction if the Defendant voluntarily agrees to stay all performance actions arising from the Solicitation until such time as the Court can hear the merits of Plaintiff's Complaint for Injunctive and Declaratory Relief on an expedited basis. The plaintiff believes that this matter can be fully briefed and argued in four to five weeks.

In support of its motion for a preliminary injunction, the plaintiff presents the following statement of points and authorities.

**A. The Legal Standard.**

In considering whether to grant an application for a preliminary injunction, the Court will consider the following factors:

(a) plaintiff's likelihood of success on the merits;

(b) whether the public interest favors granting the application for injunctive relief;

(c) the potential for irreparable harm to the plaintiff if its application is not granted and whether the plaintiff has an adequate remedy at law; and

(d) whether the harm to the plaintiff outweighs any harm to the Government or to third parties by granting the application.

*TRW Envt'l Safety Sys., Inc. v. United States*, 16 Cl. Ct. 520, 526 (1989).

**B. The Plaintiff is Likely to Prevail on the Merits.**

First, the Plaintiff is likely to prevail on the merits in this case. The requirements of the RFQ are clear. The facts of this case show clear violations of law that would entitle Onyx to the relief that it sought.

The Air Force operates Air Force Safety Offices around the world through its Air Force Safety Center ("AFSC"), which conducts inspections, investigates mishaps, performs Job Hazard Analysis, and acts on employee complaints to identify workplace hazards. Presently, the AFSC does not have an automated capability to track identified hazards in a single common database that could assist it in providing oversight in hazard management and eventually in abating all identified hazardous conditions. (Complaint, ¶ 8).

In the RFQ, the Air Force sought a software program that would track safety, fire, and health hazards and safety deficiencies identified during inspections, mishap investigations, hazard reporting, and other means from beginning (the point of identification) to end (the point of abatement). (Complaint, ¶ 9-10). The RFQ specified that it be capable of handling 250 concurrent users and that it be a

commercial product, what is often times referred to as "COTS" or "commercial, off-the-shelf software." (Complaint, ¶ 11-12). The RFQ further required that the contract award for this product, including installation and training, be made through the offeror's GSA Federal Supply Schedule contract. (Complaint, ¶ 13-14).

The Federal Supply Schedule program, which is directed and managed by GSA, provides a streamlined and simplified acquisition process for commercial supplies and services. FAR § 8.401(a). Even limited competitions that utilize GSA Schedule contracts satisfy the Government's requirement for full and open competition. 41 U.S.C. § 259(b)(3) (2000); FAR § 6.102(d)(3); *Sales Res. Consultants, Inc.*, B-284943, B-284943.2, June 9, 2000, 2000 CPD ¶ 102 at 3-4. If the Solicitation requires the use of an offeror's GSA Schedule contract, "it means that the agency intends to order all items using GSA FSS procedures and that all items are required to be within the scope of the vendor's FSS contract." *Tarheel Specialties, Inc.*, 2006 U.S. Comp. Gen. LEXIS 151, pp. 6-7 (U.S. Comp. Gen. 2006), citing *Armed Forces Merchandise Outlet, Inc.*, B-294281, Oct. 12, 2004, 2004 CPD ¶ 218 at 4. A Government acquisition using an offeror's GSA Schedule contract may not include products or services that are not listed in the GSA Schedule price list. If the Agency attempts to purchase unlisted products or services through a GSA Schedule contract, the Agency violates the requirement to use full and open competition. *Tarheel Specialties, Inc.* at p. 7, citing *OMNIPLEX World Servs. Corp.*, B-291105, Nov. 6, 2002, 2002 CPD P 199 at 4-5. Compare, *Firearms*

*Training Systems, Inc.*, 2004 U.S. Comp. Gen. LEXIS 96 (U.S. Comp. Gen. 2004) (where acquisition was conducted using full and open competition, the fact that GSA Schedule contract was requested was an administrative convenience and not a requirement. Non-FSS items purchased in this procurement were not violations of the requirement for full and open competition).

LMI currently holds a GSA Federal Supply Schedule contract. (Complaint, ¶ 26). The LMI Schedule contract, however, does not contain any identifiable commercial software product in its scope of work or on its price list. (Complaint, ¶ 27). Therefore, the hazard deficiency software that the Air Force is attempting to procure under the RFQ is outside the scope of the LMI GSA Federal Supply Schedule contract. Therefore, the Air Force's use of limited competition under FAR 8.4 to acquire a hazard deficiency software product through a GSA Schedule contract violates the U.S. Code requirement for full and open competition.

In addition to this clear violation of law, the product that LMI is attempting to offer the Air Force under this procurement does not meet the specific requirements of the RFQ. The RFQ requires that the offeror provide a software product that qualifies as a commercial product. (Complaint, ¶ 12). The FAR defines a commercial item as "any item, other than real property, that is of a type customarily used by the general public or by non-governmental entities for purposes other than governmental purposes," and has been sold, leased or licensed (or offered for sale, lease, or license) to the general public. FAR § 2.101.

Onyx understands that LMI has developed a hazard management software system under contract to the United States Postal Service. (Complaint, ¶ 24). But, there is no evidence that Onyx is aware of that the LMI product has ever been sold or offered for sale to the public as a commercial product. This product is not currently listed on LMI's GSA Schedule contract. (Complaint, ¶ 25). The LMI website does not list this product as a commercial, off-the-shelf product. (Complaint, ¶ 27). Therefore, in our best estimation, the LMI hazard management software system is not a commercial, off-the shelf software product. Therefore, the product that LMI offered to the Air Force is not responsive to the RFQ requirements.

**(1) *Prejudice Required.***

To recover in its protest, Onyx understands that it must demonstrate not only that the Agency violated the law in its evaluation, which we have clearly shown above, but also that this violation of law prejudiced Onyx's interests in gaining the award. *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed. Cir. 1996). To demonstrate prejudice, Onyx must show that but for the Agency's violation of law, Onyx would have had a substantial chance of receiving award. *Alfa Laval Separation, Inc. v. United* States, 175 F.3d 1365, 1367; CACI, *Inc. v. United States*, 719 F.2d 1567, 1574-75 (Fed. Cir. 1983).

In Onyx's case, the prejudice is apparent and obvious. Onyx understands that the Agency limited this competition to two or three GSA Schedule holders. Onyx further believes that Onyx was the only offeror to submit a proposal containing a

commercial product that is available on its GSA Schedule contract. (Complaint, ¶¶ 16-22). Therefore, had the Agency followed the requirements of the RFQ, the Agency would have made award to Onyx as the only responsive and responsible offeror. The Agency's award to LMI is directly prejudicial to Onyx's interests in this procurement. Based upon the facts outlined in its Complaint and supported by the documentation provided in the Complaint, including the affidavit of Gordon J. Silwinski, Director for IT Services of Onyx, attached to the Complaint, Onyx has demonstrated that The Air Force violated procurement statutes and regulations to the prejudice of Onyx's interests in the award. For these reasons, this Court should conclude that Onyx is likely to prevail on the merits of its case.

**C. The Public Interest Favors Onyx's Position.**

The Federal Acquisition System has been established for the express purpose of promoting competition in the acquisition process (FAR 1.102-2(a)(5)). It promotes competition by ensuring that the business of public procurement is conducted "with integrity, fairness, and openness. ... An essential consideration in every aspect of the System is maintaining the public's trust." FAR 1.102-2(c). The public's trust in the fairness and integrity of the Federal Acquisition System is challenged when the procuring officials and the procuring agency ignore the U.S. Code, their own procurement regulations, and the stated requirements of their own solicitation. This Court can preserve the original purposes and policies of the Federal Acquisition Systems and promote the public's trust in the System by

granting this request for injunctive relief.

**D. The Potential for Irreparable Harm is Clear.**

The potential for irreparable harm to both Onyx and to the Government's procurement integrity is clear. Onyx has been denied its contract by the Government's actions. If LMI continues performance, Onyx will not have any remedy at law to recover the contract rights, benefits, and revenue accruing to the new contractor. Neither this Court nor any other court can repair this damage or repay this loss.

**E. The Harm To Onyx Outweighs Any Harm To The Government Or To Third Parties By Granting The Application**

Finally, the injunctive relief sought here is nothing more than an order for *status quo ante*. The contract under protest has no predecessor. The Government is seeking a software product that it has not heretofore had. A delay of a few weeks in the acquisition of this software product will not damage the Government. It will merely keep the Government in exactly the position it was in before award. The plaintiff is willing to agree to an expedited briefing schedule on the administrative record to minimize any impact on the Government. We expect that this matter can be fully briefed and argued before this Court in four to five weeks.

Given this Court's expedited hearing of bid protest cases and the plaintiff's willingness to advance that schedule, there should be virtually no impact on the Government's business while the Court resolves the merits of Onyx's protest.

WHEREFORE, Onyx respectfully requests that this application be granted and that a preliminary injunction be entered in the form that Plaintiff suggests by its attached draft order.

Respectfully submitted,

William T. Welch
BARTON, BAKER, McMAHON & TOLLE, LLP
1320 Old Chain Bridge Road, Suite 440
McLean, Virginia 22101
(703) 448-1810 (ex. 22) - Telephone
(703) 448-3336 - Facsimile
Attorney of Record

Of Counsel:

J. Patrick McMahon
BARTON, BAKER, McMAHON
& TOLLE, LLP
1320 Old Chain Bridge Road, Suite 440
McLean, Virginia 22101
(703) 448-1810 - Telephone
(703) 448-3336 - Facsimile

Dated: November 13, 2006